OPINION
{¶ 1} Appellant, Kevin Thompson, appeals from a judgment entry of the Portage County Court of Common Pleas, Juvenile Division, granting appellee, Portage County Department of Job and Family Services ("PDJFS"), permanent custody of his biological twin sons, Logan Thompson ("Logan") and Carson Thompson ("Carson"). For the reasons that follow, we affirm the judgment of the juvenile court.
 {¶ 2} The record discloses the following facts. Logan and Carson were born on June 27, 2002. Appellant was serving a prison term for a felony conviction when the twins were born.
 {¶ 3} Due to their premature birth, Logan and Carson remained in the hospital for several weeks. In July 2002, the twins were released from the hospital and resided with their mother, Lisa Plumley ("Lisa").
 {¶ 4} On August 22, 2002, PDJFS filed a complaint in the Portage County Court of Common Pleas, Juvenile Division, requesting temporary custody of the twins. The complaint alleged that the twins were dependent and neglected children. These allegations originated from PDJFS's concerns regarding the physical condition of the twins' home environment and the determination that Lisa was unable to properly care for her children.
 {¶ 5} Following adjudicatory and dispositional hearings, on September 24, 2002, the juvenile court adopted a magistrate's decision and granted PDJFS temporary custody of Logan and Carson. Specifically, the magistrate and court found the twins to be dependent children based upon Lisa "leaving [t]he children with inappropriate caretakers and her current inability to provide for their basic needs."[1] Accordingly, PDJFS implemented a case plan for both appellant and Lisa and placed the twins with the same foster family.
 {¶ 6} On February 28, 2003, PDJFS filed a motion for permanent custody of the twins. Shortly before a hearing on the motion, appellant was released from prison during the first week of April 2003. On April 8, 2003, two days prior to the hearing, appellant approached PDJFS and expressed his desire to be reunified with Logan and Carson. As a result, PDJFS voluntarily dismissed the motion for permanent custody and re-implemented the case plan.
 {¶ 7} The case plan required appellant to accomplish the following: (1) take a paternity test; (2) complete a drug and alcohol assessment and random urine screens; (3) take parenting classes; (4) maintain adequate employment and housing; (5) submit to a psychological evaluation/counseling and sexual offender evaluation/counseling; (6) attend a domestic violence program; and (7) refrain from engaging in further criminal activity.
 {¶ 8} In addition, the case plan set forth a visitation schedule for appellant to visit with the twins. The visitation schedule allowed appellant to convene and interact with Logan and Carson twice per week for one hour. Each session was to be held at an approved location and supervised by PDJFS.
 {¶ 9} Due to Lisa and appellant's failure to comply with the case plan, PDJFS filed another motion for permanent custody on December 19, 2003. The juvenile court scheduled a hearing on the motion for February 13, 2004. At the hearing, Lisa voluntarily surrendered her parental rights to Logan and Carson. The court and PDJFS accepted Lisa's voluntary surrender.
 {¶ 10} Thereafter, the court proceeded to hear testimony relating to the termination of appellant's parental rights. Although appellant failed to appear for the hearing, his representative counsel was present.
 {¶ 11} The following testimony was given during the hearing. A doctor testified with respect to the mental and physical health of the twins. Specifically, she testified that her medical examination of Carson revealed that he was developmentally delayed and showed delays in the area of speech and language skills. She further testified that Logan was more severely developmentally delayed than Carson. The doctor stated that an MRI revealed that Logan had a condition known as periventricular leukomalacia. This condition resulted in the doctor diagnosing Logan with cerebral palsy.
 {¶ 12} A counselor with Family and Community Services of Portage County testified that appellant had been referred to her for parenting classes. However, the counselor testified that appellant had failed to attend any parenting classes in accordance with the case plan.
 {¶ 13} A social worker with PDJFS testified with respect to appellant's failure to visit or contact the twins since July 2003, and his non-compliance with the case plan objectives. Specifically, the social worker testified that appellant's visitation schedule with the twins commenced on April 24, 2003. Between the time of appellant's release from prison and PDJFS's second motion for permanent custody, the visitation schedule allowed appellant to meet with Logan and Carson on seventy-eight separate occasions. Of those possible seventy-eight visits, appellant failed to attend sixty-eight sessions. In fact, the social worker testified that the last contact appellant had with either the twins or PDJFS occurred on July 11, 2003.
 {¶ 14} The social worker's testimony further revealed appellant's almost complete lack of compliance with the case plan. She stated that appellant had failed to attend any parenting, domestic violence, or sexual offender programs. Also, he had failed to submit to a psychological evaluation, a drug and alcohol assessment, or random urine screening. With respect to obtaining a stable home and employment and refraining from engaging in further criminal activity, the social worker testified that she was unaware if appellant had complied with these portions of the case plan, as appellant had refused to return her calls or contact her in any manner since July 11, 2003. The only portion of the case plan which the social worker could affirmatively testify that appellant had complied with was his submission to paternity testing. The social worker testified that she consistently tried to facilitate appellant's compliance with the case plan by referring him to the appropriate programs and by regularly attempting to contact him.
 {¶ 15} Moreover, the social worker testified that the twins' developmental delays required the children to have a stable and permanent family life. Ultimately, based upon appellant's abandonment of the twins and his failure to comply with the case plan, the social worker recommended that PDJFS be granted permanent custody of Logan and Carson.
 {¶ 16} At the conclusion of the hearing, the twins' guardian ad litem also recommended that PDJFS be granted permanent custody of Logan and Carson. Her recommendation was based upon appellant's abandonment of the twins, his almost complete failure to comply with the case plan, and the twins' developmental delays. The guardian ad litem further stated that the twins had bonded with their foster family and required the permanent stable life that the foster family could provide. A written report, which the guardian ad litem submitted with the court, reiterated her recommendation and findings.
 {¶ 17} On February 23, 2004, the juvenile court issued a judgment entry granting PDJFS permanent custody of Logan and Carson. The court determined that "[a]fter careful consideration of all of the evidence, the Court finds by clear and convincing evidence that the children, Carson and Logan Thompson, have been abandoned by their father, [appellant]. * * *
 {¶ 18} "Further, the Court finds that the children have been in the Temporary Custody of [PDJFS] for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. The Court finds that the children have been in the Temporary Custody of [PDJFS] since September 24, 2002. * * *
 {¶ 19} "The Court also finds by clear and convincing evidence that the children cannot be placed with either of their parents within a reasonable period of time and should not be placed with their parents. * * *
 {¶ 20} "* * *
 {¶ 21} "The Court finds by clear and convincing evidence that it is in the best interest of Carson and Logan Thompson that they be placed in the Permanent Custody of [PDJFS] for purposes of adoption. The Court therefore places the children * * * in the Permanent Custody of [PDJFS]."
 {¶ 22} From this judgment, appellant filed a timely notice of appeal and now sets forth the following three assignments of error:
 {¶ 23} "[1.] The trial court erred in finding that it was in the minor children's best interest that they be placed in the permanent custody of PCDJFS as the prosecutor failed to meet its burden of proof requiring clear and convincing evidence.
 {¶ 24} "[2.] The trial court erred in granting PCDJFS's motion for permanent custody thereby terminating the parental rights of appellant Thompson as the trial court's findings were against the manifest weight of the evidence which could only lead to one conclusion, that being contrary to the judgment of the trial court.
 {¶ 25} "[3.] The trial court erred in granting the PCDJFS's motion for permanent custody where the trial court failed to consider and the prosecutors failed to show, by clear and convincing evidence, whether the children could not be placed with either parent within a reasonable time or should not be placed with either parent."
 {¶ 26} R.C. 2151.414 sets forth the guidelines that a juvenile court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates that the juvenile court must schedule a hearing and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 27} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (1) the child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (2) the child is abandoned and the parents cannot be located; (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (4) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis that the juvenile court must apply when ruling on a motion for permanent custody. In practice, the juvenile court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 29} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination. The juvenile court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 30} Assuming the juvenile court ascertains that one of the four circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, then the court proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the juvenile court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 31} The juvenile court may terminate the rights of a natural parent and grant permanent custody of the child to the moving party only if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency that filed the motion, and that one of the four circumstances delineated in R.C.2151.414(B)(1)(a) through (d) is present. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985), 18 Ohio St.3d 361, 368. An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence. Inre Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 11.
 {¶ 32} That being said, we will now examine the merits of appellant's assignments of error. For the sake of clarity, we will discuss appellant's assignments of error out of order. Under his third assignment of error, appellant contends that the record does not demonstrate, by clear and convincing evidence, that the twins could not or should not be returned to appellant within a reasonable time.
 {¶ 33} We first note that the juvenile court's judgment entry has made a dual finding with respect to the factors of R.C.2151.414(B)(1). Specifically, the court first determined that the twins had been in the temporary custody of PDJFS for longer than twelve months of a consecutive twenty-two month period, pursuant to R.C. 2151.414(B)(1)(d). The court then proceeded to determine that the children could not be placed with either of their parents within a reasonable period of time and should not be placed with their parents, pursuant to R.C. 2151.414(B)(1)(a).
 {¶ 34} "When an agency seeks permanent custody pursuant to R.C. 2151.414(B)(1)(d) the court need not find that the child cannot or should not be placed with either parent within a reasonable time as required by R.C. 2151.414(B)(1)(a). The only consideration is the best interest of the child." In re JoshuaB., 6th Dist. Nos. S-02-018, S-02-019, S-02-020, and S-02-021, 2003-Ohio-3096, at ¶ 35. Accordingly, the court's finding with respect to R.C. 2151.414(B)(1)(a) is irrelevant, as the juvenile court had already determined that the twins had been in the custody of PDJFS for longer that twelve months of a twenty-two month consecutive period, under R.C. 2151.414(B)(1)(d).
 {¶ 35} A review of the record before us demonstrates that there was clear and convincing evidence establishing the statutory prerequisite of R.C. 2151.414(B)(1)(d). Testimony and exhibits admitted at the hearing showed that PDJFS was granted temporary custody of the twins on September 24, 2002. Fifteen months later, on December 19, 2003, PDJFS filed its second motion for permanent custody. At no time during this period did PDJFS relinquish temporary custody of the twins.
 {¶ 36} Thus, the court properly determined, by clear and convincing evidence, that R.C. 2151.414(B)(1)(d) was applicable. Any additional finding with respect to R.C. 2151.414(B)(1)(a) was extraneous. Appellant's third assignment of error is without merit.
 {¶ 37} Under his first assignment of error, appellant argues that the juvenile court erred in determining that it was in the twins' best interests to be placed in the permanent custody of PDJFS. Specifically, appellant maintains that the court's findings with respect to the statutory factors of R.C.2151.414(D) are not supported by clear and convincing evidence. We disagree.
 {¶ 38} The juvenile court's judgment entry expressly states its findings with respect to each factor under R.C. 2151.414(D). Ultimately, the court determined that it was in the twins' best interest to be placed in the permanent custody of PDJFS. After careful review of the record before us, we conclude that the court's findings were supported by clear and convincing evidence.
 {¶ 39} First, the court found that the twins "have had little interaction with [appellant]" and that "[t]he children are attached and bonded with their foster family." These findings are substantiated by the testimony of the social worker and the guardian ad litem. The social worker testified that appellant had failed to appear for sixty-eight separate, scheduled visitations. She further stated that, despite her best efforts, appellant has had no contact with the twins since July 11, 2003. The guardian ad litem testified that her observations of the twins with their foster family allowed her to conclude that the twins had bonded with the family.
 {¶ 40} Next, the court determined that "because of [the twins'] developmental delays and age, [they] are unable to express their wishes in this matter." The court then considered the guardian ad litem's recommendation that the twins be placed in the permanent custody of PDJFS. The record before us demonstrates that the twins were one year and eight months old at the time of the hearing for permanent custody. Furthermore, the doctor's testimony that Logan and Carson suffered from developmental delays due to their premature birth supports the juvenile court's determination that developmental delays further precluded the twins from expressing their wishes.
 {¶ 41} The juvenile court then restated the custodial history of the children from the time of their birth and confirmed that "the children have been in the Temporary Custody of [PDJFS] for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999." As mentioned previously, our review of the record verifies the court's determination that the twins were in the temporary custody of PDJFS for a consecutive fifteen-month period.
 {¶ 42} Finally, the court concluded that "the children have a need for a legally secure permanent placement and that placement cannot be achieved without granting Permanent Custody to [PDJFS.] The Court finds the children have been abandoned by [appellant]," pursuant to R.C. 2151.414(E)(10). Under R.C. 2151.011(C), "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period." The social worker testified that appellant had no contact with the twins from July 11, 2003, until the date of the hearing, February 13, 2004. This unrebutted testimony demonstrates that the juvenile court appropriately determined that appellant had abandoned the twins under R.C. 2151.414(E)(10).
 {¶ 43} The foregoing confirms that the juvenile court properly considered the statutory factors of R.C. 2151.414(D) and that its findings in relation to these factors were supported by clear and convincing evidence. Appellant's first assignment of error is without merit.
 {¶ 44} Under his second assignment of error, appellant contends that the juvenile court's judgment was against the manifest weight of the evidence. Appellant asserts that the evidence demonstrates that he has substantially complied with the case plan and, therefore, the juvenile court erred by granting permanent custody to PDJFS. We disagree.
 {¶ 45} As noted by the juvenile court, appellant, despite reasonable case planning and the diligent efforts of PDJFS, has continuously and repeatedly failed to remedy the conditions causing the twins to be placed in the temporary custody of PDJFS. In doing so, the court noted appellant's failure to maintain contact with the twins and his failure to comply with the overwhelming majority of the case plan objectives.
 {¶ 46} The testimony at trial substantiates the juvenile court's findings. To recapitulate, the social worker testified that appellant's only active participation in the case plan was submitting to paternity testing. She stated that appellant had failed to attend any parenting, domestic violence, or sexual offender programs. Also, he had failed to submit to a psychological evaluation, a drug and alcohol assessment, or random urine screening. With respect to obtaining a stable home and employment and refraining from engaging in further criminal activity, the social worker testified that she was unaware if appellant had complied with these portions of the case plan as appellant had refused to return her calls or contact her in any manner since July 11, 2003.
 {¶ 47} We further note that the social worker produced evidence of her diligent efforts to contact appellant and facilitate his compliance with the case plan. Notwithstanding her efforts, appellant failed to actively participate, in any manner, with the reunification process. Moreover, appellant has failed to present any evidence that would rebut the social worker's testimony. In fact, appellant was not even present at the motion for permanent custody hearing.
 {¶ 48} Accordingly, due to appellant's almost complete failure to comply with the case plan and his abandonment of the twins, the juvenile court appropriately granted PDJFS permanent custody of the twins. Thus, the court's judgment was not against the manifest weight of the evidence. Appellant's second assignment of error is without merit.
 {¶ 49} Based upon the foregoing analysis, appellant's first, second, and third assignments of error are without merit. We hereby affirm the judgment of the juvenile court.
Grendell, J., Rice, J., concur.
[1] Prior to the issuance of the magistrate's decision, PDJFS dismissed its complaint allegations of neglect.