OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, appellant, Regina Byler, appeals the judgment of the Geauga County Court of Common *Page 2 
Pleas, Juvenile Division, granting permanent custody of her daughter, D.H. (hereinafter "D.") (d.o.b. 2/3/96), to appellee, the Geauga County Department of Job and Family Services ("the agency"), and terminating her parental rights. For the reasons that follow, we affirm the judgment of the lower court.
 {¶ 2} On November 22, 2005, the agency filed a complaint in the Juvenile Court alleging that D., and her half-brother, E.B. (hereinafter "E.") (d.o.b. 8/22/91), were abused, neglected and dependent children. According to the complaint, D. was sexually abused by E., who entered a plea of "true" to a charge of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4), if committed by adult, in a delinquency proceeding held in Geauga County Juvenile Court Case No. 05 JD 000360. The complaint further alleged that Regina did not make adequate efforts to protect D. from E. after she had learned of the abuse.
 {¶ 3} On November 28, 2005, the trial court appointed Carolyn and Rick Kirkpatrick as guardians ad litem for the children.
 {¶ 4} On November 30, 2005, the trial court entered an order placing D. in the temporary custody of the agency, with the consent of appellant and Scott, D.'s father.[1] A preliminary case plan was subsequently filed which, among other things, ordered that E., D., and Regina complete mental health assessments.
 {¶ 5} On January 13, 2006, the trial court held an adjudicatory hearing on the complaint. The court found, by clear and convincing evidence, that D. was an abused and dependent child. In so concluding, the court stated as follows: *Page 3 
 {¶ 6} "[T]he court finds that [E.] was sexually abuse[d] by his mother and father. Mother engaged in sexual intercourse with her son, and his father, Merl * * *, actively participated in helping to facilitate the sex act. [D.] was sexually abused by her brother, [E.], who was adjudicated to have committed the offense of Gross Sexual Imposition in violation of 2907.05(A)(4), a felony of the fourth degree if committed by an adult. The court further finds [E.] to be a neglected child as defined by ORC2151.03(A)(2) (3). The court finds specifically that [E.'s] father solicited [E.'s] mother to engage in sexual conduct with [E.] and his mother willingly participated in such conduct."
 {¶ 7} The court held a dispositional hearing on February 13, 2006. In its judgment entry following the hearing, the court ordered that the children remain in the temporary custody of the agency. The court noted that E., D. and Regina had completed their initial assessments, and that E. and D. had begun treatment, but Scott and Merl had not. The court noted, in its concerns that "[treatment for [E.], [D.] and Regina is expected to be lengthy and has only just begun." In addition, the court issued a no contact order against Regina, which ordered her not to intentionally be within 1/4 mile of the children, with the exception that she "may have contact with the children consistent with the therapeutic recommendations of the children's counselors."
 {¶ 8} On March 23, 2006, the trial court issued an agreed order of child support, in which Regina was ordered to pay $84.21 per month.
 {¶ 9} On May 19, 2006, the court held a review hearing. At this time, Regina was in the Trumbull County Jail awaiting trial on the criminal charges brought as a result of her sexual activity with E.. As a result, Regina was unable to continue counseling, and had not completed a sexual aggression assessment, as ordered. *Page 4 
 {¶ 10} Another review hearing was held on August 11, 2006. Following the hearing, the trial court found that although Regina had initiated a STOP assessment as ordered, she had recently been sentenced to three years of incarceration for her conduct related to the case.
 {¶ 11} On October 18, 2006, the agency filed a motion for permanent custody, pursuant to R.C. 2151.413 and R.C. 2151.414. As grounds for the motion, the agency stated that the children "cannot be placed with either parent within a reasonable time" and "should not be placed with either parent." The motion further alleged that, notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents, they failed to substantially remedy the conditions that caused the children to be placed outside the home; that chronic mental and/or emotional illness was so severe that it makes the parents unable to provide an adequate home within one year after the court holds the permanent custody hearing; that the parents had demonstrated a lack of commitment to the children by failing to regularly support them; that Regina was convicted of "an offense under Section 2907.03 of the Revised Code [Sexual Battery], and the victim of the offense is [E.], a sibling of [D.]," and that as a result of this conviction she "would not be available to care for the children for at least eighteen (18) months after the filing of this motion"; and that an award of permanent custody to the agency was in the best interests of the children.
 {¶ 12} A hearing on the agency's motion was held on January 11, 2007. At the hearing, Regina executed a voluntary permanent surrender of custody of E. to the agency. On January 22, 2007, the trial court entered judgment granting permanent custody of E. and D. to the agency. *Page 5 
 {¶ 13} Regina appeals the decision of the trial court on the limited basis of the trial court's grant of custody of D. to the agency, assigning the following as error for our review:
 {¶ 14} "The Juvenile Court erred in determining that granting permanent custody to the Agency was in the best interest of the child."
 {¶ 15} In her sole assignment of error, Regina raises three arguments: First, she argues that the trial court committed reversible error by failing to discuss of all the best interest factors as contained in R.C.2151.414(D). Second, she argues that the trial court's finding, granting permanent custody of D. to the agency, was against the manifest weight of the evidence. Third, and finally, Regina argues that the trial court abused its discretion by terminating her parental rights and granting permanent custody of D. to the agency, rather than granting legal custody of D. to Sharon, as she requested.
 {¶ 16} As an initial matter, we note the well-established legal axiom that a parent's right to raise a child has been described as an essential and basic civil right. In re Hayes (1997) 79 Ohio St.3d 46,48, citing Stanley v. Illinois (1972), 405 U.S. 645, 651. Accordingly, the permanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case. In reHoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14; In re Smith (1991),77 Ohio App.3d 1, 16. Thus, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." (Citation omitted.) Hayes, 79 Ohio St.3d at 49. *Page 6 
 {¶ 17} These protections are embodied in Revised Code Chapter 2151. Pursuant to R.C. 2151.353(A)(4), a trial court may only commit an abused, neglected, or dependent child to the permanent custody of the children's services agency upon a finding, by clear and convincing evidence, that any of the following apply: (a) the child is not abandoned or orphaned, has not been in the temporary custody of one or more public or private children's services agencies or children's placement agencies and the child cannot be placed with either of the child's parents within a reasonable amount of time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child able to take permanent custody, and; (d) the child has been in the temporary custody of one or more public or private children's services agencies or child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. R.C. 2151.414(B); see also, In re Noda, 11th Dist. No. 2004-L-212. 2005-Ohio-2213, at ¶ 26;In re Goff, 2003-Ohio-6089, at ¶ 6.
 {¶ 18} If any of the preceding elements are found by clear and convincing evidence, the court is then obligated to ascertain, by clear and convincing evidence, what is in the best interest of the child.Noda, 2005-Ohio-2213, at ¶ 29; Goff, 2003-Ohio-6089, at ¶ 7.
 {¶ 19} In making a permanent placement determination based upon the best interest of the child, the court is required to consider all relevant factors under R.C. 2151.414(D), including but not limited to: (1) the interrelationship and interaction of the child with parents, siblings, relatives, foster caregivers and out-of-home care providers, and any other person who may significantly affect the child; (2) the wishes of the child, if *Page 7 
ascertainable, or as expressed through the child's guardian ad litem with due regard for the child's maturity; (3) the custodial history of the child; (4) the child's need for a legally secure placement, and whether this can be achieved without a grant of permanent custody to an agency, and; (5) whether any of the factors of R.C. 2151.414 (E)(7)-(11) apply. Noda, 2005-Ohio-2213, at ¶ 29; Goff, 2003-Ohio-6089, at ¶ 7;In re Smith, 11th Dist. No. 2002-A-0098, 2003-Ohio-800, at ¶¶ 9-10. Clear and convincing evidence is more than a mere preponderance of the evidence, but is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Holcomb (1985), 18 Ohio St.3d 361, 368 (citation omitted).
 {¶ 20} When reviewing a trial court's decision on a manifest weight of the evidence basis, an appellate court is guided by the presumption that the findings of the trial court were correct. Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80; In re Williams, 10th Dist. Nos. 01AP-867 and 01AP 868, 2002-Ohio-2902, at ¶ 7. "The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures, and may use these observations in assessing the credibility of the testimony." In re Memic, 11th Dist. Nos. 2006-L-049, 2006-L-050, 2006-L-051, 2006-Ohio-6346, at ¶ 21, citingSeasons Coal, 10 Ohio St.3d at 80. Accordingly, judgments which are supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 21} The aforementioned "standard of review for weight of the evidence issues applies * * * when reviewing awards of permanent custody to public children services *Page 8 
agencies * * *. If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, * * * we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." In re Kangas, 11th Dist. No. 2006-A-0084, 2007-Ohio-1921, at ¶ 85 (citations omitted).
 {¶ 22} In the instant matter, the trial court found that R.C.2151.414(B)(1)(a) had been satisfied by clear and convincing evidence. Regina does not dispute this, but rather argues that the trial court failed to consider all of the best interest factors. Specifically, she argues that the trial court omitted any discussion of D.'s interactions with her mother under R.C. 2151.414(D)(1). We disagree.
 {¶ 23} In its judgment entry, the trial court considered D.'s "interaction with parents, siblings, relatives, foster caregivers and * * * other significant persons," and made the following relevant findings:
 {¶ 24} "[D.] was sexually abused by her brother, [E.]. [E.] was sexually abused by his mother * * *. [E.] has no contact with either of his parents or his sibling * * *. [D.] initially resided with her grandmother, but was removed from her grandmother's home and placed with her aunt due to grandmother's inability to provide for her. [D.] has adjusted well to her aunt's home. Her aunt has expressed an interest in adopting [D.] if [D.] becomes eligible for adoption."
 {¶ 25} As is clear from the foregoing, there is no evidence that the trial court failed to consider this first factor. "This court has held on several occasions that the provisions of R.C. 2151.414(D) are mandatory and `must be scrupulously observed.'" In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at *13 (citations omitted). However, this court also concluded that all that is necessary to *Page 9 
satisfy the requirements of the statute is "some indication on the record that the trial court considered all four factors found in R.C.2151.414(D) when reaching its judgment." Id.
 {¶ 26} Contrary to Regina's assertions, the trial court addressed D.'s interrelationship and interactions with her in other portions of the judgment entry. In this regard, the court stated as follows:
 {¶ 27} "Before * * * Regina * * * could be considered as a possible custodian * * * [she] would have to successfully completed intensive sex offender treatment and be closely monitored for an extended period of time after [she] is released from prison. Adult sex offender treatment typically takes approximately 3-5 years to complete successfully." * * * Regina * * * is currently incarcerated for committing a sexual offense against her son. She has not yet completed sex offender treatment."
 {¶ 28} As is clear from the foregoing, the trial court addressed the interrelationship or interaction between D. and Regina in making its decision. Essentially, the trial court acknowledged that therewas no interrelationship or interaction between D. and Regina.
 {¶ 29} Our review of the record supports the trial court's findings. D. had been in the temporary custody of the agency since December 1, 2005. A no contact order was issued against Regina in February of 2006 following the adjudicatory hearing. Regina had been incarcerated since March of 2006, pending her trial on the Sexual Battery charges. In June 2006, Regina was sentenced to four concurrent three year prison terms for these charges. Thus, there was competent, credible evidence to support the aforementioned finding of the trial court. *Page 10 
 {¶ 30} Finally, we find no merit to Regina's argument that the trial court erred or abused its discretion by failing to consider the "less drastic alternative" of granting legal custody of D. to her aunt, Sharon.
 {¶ 31} At trial, Sharon testified that she has had custody of D. since February 2006. By all accounts, D.'s grades, attitude, personal hygiene, and behavior had improved dramatically since that placement. She is attending counseling regularly. Although D. misses her mother, she remains "angry" with her and doesn't think she can provide her with a safe environment. When asked if the agency had discussed the possibility of having legal custody of D., Sharon stated that she was only interested in adoption rather than legal custody, because she felt that D. "needs a stable home and stable guidance."
 {¶ 32} With regard to fulfilling its statutory duty under R.C.2151.414(D), the Supreme Court of Ohio, in the case In re Shaefer, held that such duty "does not include the requirement * * * that the juvenile court determine by clear and convincing evidence that `termination of appellant's parental rights was not only a necessary option, but also the only option.' * * * The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors," as long as it addresses all other relevant statutory factors. 111 Ohio St.3d, 498,2006-Ohio-5513, at ¶ 64. Since the trial court considered all of the relevant factors in determining that a termination of Regina's parental rights was in D.'s best interest, and there was competent, credible evidence in the record to support the trial court's findings, the trial court did not err in awarding permanent custody to the agency. *Page 11 
 {¶ 33} Regina's sole assignment of error is without merit.
 {¶ 34} The judgment of the Geauga County Court of Common Pleas, Juvenile Division is affirmed.
CYNTHIA WESTCOTT RICE, P.J., MARY JANE TRAPP, J., concur.
[1] Scott and appellant lived together with D. and E. prior to the incident of sexual abuse which led to the agency's complaint. He is not a party to this appeal. Pursuant to the aforementioned court order, the children were separated, with the agency temporarily placing D. in the home of her paternal grandmother, Judith, while E. was placed in a foster home. On February 3, 2005, at the request of Judith, D.'s placement order was modified to place her in the home of her paternal aunt, Sharon. E. was subsequently ordered to a residential treatment facility on April 5, 2006. *Page 1