[Cite as *In re B.R.C.*, 2014-Ohio-69.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

IN RE:                                    :        **O P I N I O N**

B.R.C. and E.J.C.                         :
                                                   **CASE NOS.  2013-P-0059**
                                          :                **and  2013-P-0060**


Civil Appeals from the Portage County Court of Common Pleas, Juvenile Division, Case Nos.  2013 JCF 00191 and 2013 JCF 00192.

Judgment:  Affirmed.


*Gregory J. Wysin*, P.O. Box 2100, Streetsboro, OH 44241 (For Appellant-Lori Claeys).

*Victor V. Vigluicci*, Portage County Prosecutor, *Denise L. Smith*, Chief Assistant Prosecutor, and *David M. Brode,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee-Portage County Department of Jobs and Family Services).

*Madeline Lepidi-Carino*, Law Office of Madeline Lepidi-Carino, P.O. Box 2235, Hudson, OH 44236 (Guardian ad litem).


DIANE V. GRENDELL, J.

{¶1}    Appellant, Lori Claeys, appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of her children, B.R.C. and E.J.C., to appellee, the Portage County Department of Job and Family Services.  (PCDJFS).  The issues to be determined in this case are whether it is in the children's best interest to grant permanent custody to a children's services agency when their parent was incarcerated, has a history of drug use, and has failed to comply with

the case plan; whether the children's wishes were properly considered when they were conveyed to the court through a guardian ad litem report and the children's counsel; whether the lower court was required to make a finding that PCDJFS made reasonable efforts to return the children to their mother's custody; and whether the denial of a parent's request for drug testing warrants reversal of a lower court's determination regarding the termination of parental rights. For the following reasons, we affirm the decision of the court below.

{¶2} Lori and Michael Claeys, who are separated, are the biological parents of, E.J.C., born on January 14, 2005, and B.R.C., born on January 16, 2002.

{¶3} On March 31, 2011, PCDJFS filed Complaints, alleging that the children were abused, neglected, and dependant. The Complaints asserted that police responded to Lori's home, where she and her boyfriend were involved in a domestic violence incident. While in the home, the police found drug paraphernalia in the children's bedroom dresser. Lori subsequently tested positive for drug use. Lori's home was also discovered to be lacking electricity. The children were removed from the home.

{¶4} On May 27, 2011, B.R.C. and E.J.C. were adjudicated neglected and dependant, due to the lack of adequate housing, drug paraphernalia in their bedroom, and the unknown whereabouts of Lori. On June 27, 2011, temporary custody of the children was granted to PCDJFS.

{¶5} On March 5, 2013, PCDJFS filed a Motion for Permanent Custody with respect to E.J.C. and B.R.C., pursuant to R.C. 2151.413 and .414.

2

{¶6} On April 8, 2013, Lori filed a Motion for In Camera Interviews of the children.

{¶7} On April 19, 2013, Lori filed a Motion to Continue Temporary Custody.

{¶8} Lori filed a Motion for Hair Follicle Testing on April 29, 2013, requesting an order that Lori, who was incarcerated, be permitted to take a drug test to prove her sobriety. The court expressed concerns that this could have a detrimental impact on her Motion for Judicial Release, filed in the Court of Common Pleas in her criminal case. The court noted that Lori would be able to testify regarding her sobriety and denied the motion.

{¶9} A Hearing on PCDJFS' Motion for Permanent Custody was held on May 31, 2013. The parties stipulated that the children had been in the custody of PCDJFS for 12 or more months of a consecutive 22 month period. The following pertinent testimony was given at the hearing.

{¶10} Natalie Anderson, an Out-patient Counselor at Children's Advantage, testified that B.R.C. began receiving counseling services in 2007 and resumed counseling in 2010. In 2010, E.J.C. began attending counseling sessions. Anderson counseled both boys since September of 2011, meeting with them on a bi-weekly basis.

{¶11} Anderson counseled the children on identifying and expressing their thoughts and feelings about foster care, being away from their mother, and possible adoption. B.R.C. has been diagnosed with Anxiety Disorder and both boys have Adjustment Disorder.

{¶12} Both children reported difficulty with being separated from their mother and related concerns about adoption. The children love their mother and have

expressed a desire in the past to be reunited with her, but also question her use of drugs and become angry when she does not visit. They had not seen their father, Michael Claeys, in approximately five years.

{¶13} Anderson reported that things were "better" and the children were happy with their current foster parents. They had been reporting that they were doing well and had "been smiling" in the past month of treatment.

{¶14} Anderson testified that Lori had been involved in counseling in the past but had not shown up for five out of ten appointments. Although Lori initiated the children's counseling in 2010, she had not made contact with the agency to ask about their progress.

{¶15} Anderson explained that the children had been in four different foster care placements. They told her that "they like their current placement" and wanted to be adopted by those foster parents. Anderson reported that they were getting attention from their current foster family and there were no concerns with their schooling.

{¶16} Cheryl Schneider, who works for PCDJFS, monitored the case plan in the present matter. She testified that Lori was homeless and one objective was for her to obtain stable housing for the children. Lori was referred to programs to help her obtain housing, but, based on Lori's own statements to Schneider, Lori did not utilize these services. Schneider explained that Lori, who was incarcerated at the time of the hearing, did not have employment or housing lined up upon her release from prison. Schneider also believed that Lori planned on going to a residential drug treatment facility after her release. Michael could not provide for the children's care or housing due to his mental health issues.

4

{¶17} The next objective was for Lori to stop her drug use. Lori was required to participate in random drug screens. Out of 20 requested screens, Lori was a "no show" for eight, testified positive seven times, and tested negative five times. During several of the no shows, Lori had been incarcerated. Lori also did not comply with the requirement to get a full drug assessment or to participate in drug and alcohol treatment, although she did complete some drug treatment after she became incarcerated. Lori also failed to complete a required psychological evaluation.

{¶18} PCDJFS held Family Team Meetings to discuss the case plan and progress that had been made. Lori attended only one of the nine meetings. Also, out of 47 visits offered prior to her incarceration, she visited the children 14 times. In addition, eight of the 47 visits were cancelled because Lori tested positive for drugs or alcohol. Visits which would have been allowed in 2012 did not occur due to Lori's incarceration. Schneider testified that Lori seemed to be a good mother and the children "appear to have had good parenting at sometime in their life." She noted that when B.R.C. lived with his mother, however, he took on the parental role in the home and even attempted to collect donations at school to pay bills.

{¶19} According to Schneider, the children had been in their current foster placement since April 1, 2013, and have "really bonded with their foster parents." The foster parents are able to provide stability and are loving. The children have accepted that they may not live with their mother again and are "tired of the lack of permanency" in their lives. Schneider explained that the children were removed from previous foster care placements due to the fact that one did not want a long term placement, and the other two had rule violations in the home.

{¶20} According to Schneider's testimony, Lori was charged with Theft in August of 2011, Aggravated Drug Possession in October of 2011, and was convicted of Illegal Manufacturing of Methamphetamines in December of 2011.

{¶21} Schneider was aware that Lori had completed educational programs, drug counseling, and parenting classes while incarcerated. She also wrote to the children approximately once a month. Lori agreed to participate in psychiatric services and assessments while incarcerated, but there was no available provider of these services at the jail or prison.

{¶22} Deborah Kowalski, the mother of Lori's ex-boyfriend, testified that Lori was a good mother, the children loved her, and she provided them a good home. In 2010, after Lori had knee surgery, she began taking pain killers and her attitude started to change.

{¶23} Lori testified that she was scheduled to be released from prison on January 20, 2015. However, she had filed a motion for judicial release and believed that it would be granted, based on representations made to her by the court at the time of sentencing.[1]

{¶24} Lori admitted that she had an addiction problem, which arose from her use of prescription pain pills following a surgery. During the time when the children were removed from her house, she was depressed and her mother had passed away. In jail and prison, she took a Sober Success class, education classes on drug and alcohol treatment, a domestic violence class, and various other self-improvement classes, and also attended Alcoholics Anonymous and Narcotics Anonymous meetings. She attempted to complete the psychological evaluation while in jail but was unable to do so

---

1. According to Lori's brief, her Motion for Judicial Release was granted on June 12, 2013.

because of her imprisonment. She explained that prior to her incarceration, she took steps to get housing but was told she would have to wait. She testified that she has not used drugs since December 14, 2010. She conceded that she had only really begun to comply with the case plan after she became incarcerated.

{¶25} Lori explained that she has a temporary place to stay upon being released from prison and would get an apartment and employment.

{¶26} Madeline Lepidi-Carino, the children's guardian ad litem, testified that it would be in their best interest to be placed in the permanent custody of PCDJFS. She emphasized that Lori was not visiting the children on a consistent basis, they need a secure placement, and cannot get that with their mother. She filed a guardian ad litem report on April 22, 2013, which contained her recommendation discussed above, and also outlined her interactions with the children.

{¶27} On June 6, 2013, the trial court issued a Journal Entry, granting permanent custody of B.R.C. and E.J.C. to PCDJFS. The court found that the children had been in the custody of PCDJFS for 12 or more months of a consecutive 22 month time period. The court found that the children were bonded with their mother, each other, and their current foster parents, and that they had "voiced their wishes through their Guardian Ad-litem and their individual attorneys that they wish to be adopted by their current foster parents." The court noted the missed visitations by Lori. The court found that the children had a need for a legally secure permanent placement, in that their mother had substance abuse issues and had not completed the components of her case plan. The court noted that she had filed a Motion for Judicial Release and that "she also has maintained sobriety in prison." The court explained that it considered the

7

factors in R.C. 2151.414(E)(7)-(10). Based on these findings, the court held that it was in the best interest of the children to be placed in the permanent custody of PCDJFS.

**{¶28}** Lori filed her Notice of Appeal on July 5, 2013.

**{¶29}** On July 30, 2013, PCDJFS filed a Motion for Finding of Reasonable Efforts, requesting that the trial court make a finding that PCDJFS made reasonable efforts to prevent the continued removal of the children from the home. On August 5, 2013, the court issued a Magistrate's Decision, finding that PCDJFS made reasonable efforts to prevent the continued removal of the children from the home and to finalize the permanency plan.

**{¶30}** On appeal, Lori raises the following assignments of error:

**{¶31}** "[1.]    The trial court abused its discretion and committed reversible error by failing to properly consider the factors set out in R.C. 2151.414(D) and 2151.414(E), resulting in a finding against the manifest weight of the evidence presented to the court that permanent custody was in the children's best interest.

**{¶32}** "[2.]    The trial court impermissibly relied upon testimony from a social worker and a therapist regarding the wishes of the children in making its determination that permanent custody was in the children's best interests, as the record was devoid of any evidence on the issue admissible under R.C. 2151.414(D)(1)(b).

**{¶33}** "[3.]    The trial court erred in finding that the Portage County Department of Job and Family Services made reasonable efforts to reunify the children with their mother, and was without jurisdiction to issue such findings after the filing of mother's notice of appeal.

8

**{¶34}** "[4.]  The trial court erred by arbitrarily denying mother's motion for hair follicle testing, thereby precluding her from presenting relevant objective evidence of her continued sobriety and case plan compliance."

**{¶35}** "[P]arents who are suitable persons have a 'paramount' right to the custody of their minor children."  (Citations omitted.)  *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990).  "The fundamental interest of parents is not absolute, however."  *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11.  The "extreme disposition" of permanently terminating a parent's rights with respect to a child "is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child."  *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).  "[T]he *fundamental* or *primary* inquiry at the dispositional phase of these juvenile proceedings is not whether the parents * * * are either fit or unfit," rather, it is "the best interests and welfare of that child [that] are of paramount importance."  (Emphasis sic.)  *Id.* at 106.

**{¶36}** A trial court must apply R.C. 2151.414(B) to determine the outcome of a motion for permanent custody.  The statute provides, in pertinent part:

**{¶37}** "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

* * *

**{¶38}** "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *."

**{¶39}** Once the juvenile court determines that one of the circumstances listed in R.C. 2151.414(B)(1)(a) through (d) is present, "then the court proceeds to an analysis of the child's best interest." *In re T.B.*, 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415, ¶ 34. "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, * * * [t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; * * * [t]he wishes of the child * * *; [t]he custodial history of the child * * *; [t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency"; and whether any relevant factors in (E)(7) to (11) of this section apply. R.C. 2151.414(D)(1)(a)-(e).

**{¶40}** The trial court's determination regarding the best interest issue must be supported by clear and convincing evidence, which is "more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Krems*, 11th Dist. Geauga No. 2003-G-2535, 2004-Ohio-2449, ¶ 36, citing *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

**{¶41}** In cases involving the termination of parental rights, an appellate court applies the civil manifest weight of the evidence standard of review. *In re D.H*, 11th Dist. Geauga No. 2007-G-2759, 2007-Ohio-3337, ¶ 20-21. "Judgments supported by

some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶42} In her first assignment of error, Lori concedes that the children were in the custody of PCDJFS for 12 out of 22 consecutive months. She argues that the determination to grant PCDJFS permanent custody of the children was not in their best interest.

{¶43} As an initial matter, the court appears to have addressed each of the necessary best interest factors, including the children's relationship with Lori and their foster parents, the children's wishes, the children's history in the custody of PCDJFS, and the children's need for a legally secure placement. Lori missed approximately half of the visits with them while they were in PCDJFS' custody, she failed multiple drug tests, and was eventually incarcerated due to her drug use. She failed to comply with various aspects of the case plan, as testified to by Schneider. This includes completing a psychological examination and a full drug assessment and obtaining stable housing or employment.

{¶44} There is little evidence to support a finding that, even after judicial release, Lori will be able to provide a secure home for the children. Schneider testified that Lori did not have an adequate plan for housing after her release. Lori herself stated that she had a "temporary" place to stay once released, where her children would not live, would try to "get back on [her] feet" and move into an apartment where she could get public

11

transportation. She could not be more specific with these plans or provide any timetable for when she would be able to obtain housing adequate for the children.

{¶45} Several witnesses, including the children's guardian ad litem, testified regarding their need for permanency and a legally secure placement. They have been in the custody of PCDJFS since their removal from Lori's home in March of 2011, over two years ago. The children were often confused and angry due to their mother's inconsistency and failure to show up for visitation. Based on the lack of stability in their lives and the mother's inability to maintain an adequate home, there was evidence for the court to find that this best interest factor was satisfied.

{¶46} Further, although there was testimony by Lori that she had not used drugs while she was incarcerated, even when accepted as true, it does not follow that she has remedied her drug usage problems. While she may not have used drugs and attended drug programs while incarnated, this limited period of sobriety is insufficient to find that it would be in the children's best interest to either be placed in her custody or to continue proceeding under the status quo. *See In re T.F.*, 11th Dist. Ashtabula No. 2009-A-0039, 2010-Ohio-590, ¶ 56 (temporary periods of sobriety, while in controlled environments such as jail, are not evidence that a parent has solved her alcohol problem); *In re S.P.*, 11th Dist. Lake Nos. 2011-L-032 and 2011-L-033, 2011-Ohio-3747, ¶ 59. The argument that Lori has turned her life around while in prison, when viewed in light of her repeated failure to comply with the case plan before her incarceration and the remaining concerns about housing and employment, does not warrant a finding that the trial court erred. *See In re Hatfield*, 4th Dist. Lawrence No. 03CA15, 2003-Ohio-7339, ¶ 29 (while

12

incarceration may prevent a parent from fully complying with the case plan, appellant's failure to complete her case plan prior to incarceration can be considered by the court).

{¶47} Lori asserts that, in conducting its best interest analysis, the trial court "ignored the evidence provided to it regarding the likely approval" of her motion for judicial release. On the contrary, the court took this into consideration and specifically found that "[e]ven if [Lori] were granted a Judicial Release, her treatment issues, housing issues, job issues, and probation issues would once again have to be addressed," and noted that it would not be in the children's best interest to "ask the boys to wait on their mother to straighten out her life."

{¶48} It was also impossible for the court to determine that it would be in the best interest of the children to remain in PCDJFS' temporary custody based on the potential grant of Lori's motion and additional uncertainty about whether she would be sober and able to provide a home for the children once she was released. *See In re V.H.*, 10th Dist. Franklin No. 05AP-325, 2006-Ohio-532, ¶ 46 (when appellant was incarcerated, awaiting sentencing, and represented that there was a "strong possibility" that she would not be sentenced to prison, "[s]uch argumentation * * * was speculative"); *In re K.M.D.*, 4th Dist. Ross No. 11CA3289, 2012-Ohio-755, ¶ 26.

{¶49} While Lori may argue that she is now making progress, since she has been released from jail, and may be able to obtain suitable housing for her children, there is no basis for reversing the lower court's holding or for determining that she should be given an additional chance to present evidence of the changes or improvements made after the judgment terminating her parental rights was entered. Courts have rejected such an argument in the past and have only considered the facts

13

before the court at the time of the permanent custody hearing. *See In re N.A.P.*, 5th Dist. Washington Nos. 12CA30 and 12CA31, 2013-Ohio-689, ¶ 40 (the lower court's holding that it was in the children's best interest to be placed with children's services must be affirmed when, at the time of the permanent custody hearing, the appellant maintained that, upon his release from a correctional facility, he would obtain secure housing, since this assertion was unproven and speculative. In light of past factors, and the children's need for stability, they should not have their lives subjected to uncertainty, especially when considering the appellant's past inability to provide a home); *In re T.F.*, 2010-Ohio-590, at ¶ 57 (where the appellant had recently been released from a halfway house, obtained employment but not started working at the time of the permanent custody hearing, and had not yet provided housing suitable for the children, the permanent custody determination was in the children's best interest).

**{¶50}** Regarding the children's wishes, their independent counsel represented to the court that the children wished to be adopted. This evidence was supported by the testimony that they had been doing well in the present foster home, were happy, and had bonded with their foster family. While the children did state to their guardian ad litem that they wished to remain with their mother at various points during her interviews with them, it appears that they were conflicted about their own wishes. When reviewing this factor in light of the entirety of the evidence, we cannot say that it provides a basis to reverse the lower court's decision.

**{¶51}** Lori also argues that the trial court failed to include in its entry a discussion of whether R.C. 2151.414(E)(7), which relates to a parent's conviction for certain criminal offenses, applied to the present case. However, the court specifically stated

14

that it did consider this factor. It was unnecessary for the court to include a more specific discussion of this factor, since there was no evidence in the record that this factor was relevant to the present case. *In re C.K.*, 11th Dist. Ashtabula Nos. 2013-A-0028 and 2013-A-0029, 2013-Ohio-3773, ¶ 46.

{¶52} Lori asserts that the trial court improperly considered evidence regarding the testimony of a social worker and therapist regarding the children's best interests. We will address this issue in the second assignment of error, where it is separately raised.

{¶53} Lori also presents various arguments in support of her position that the trial court erred in finding that the children could not be returned to her home within a reasonable time period and in its consideration of the necessary factors under R.C. 2151.414(E). It does not appear from the court's judgment entry that it made such a finding. Instead, it found that the children had been in the custody of PCDJFS for 12 or more of 22 consecutive months and then evaluated the best interests of the children. While it made findings regarding the children's need for a legally secure placement and the reasons they could not be returned to Lori's custody, this related to their best interests.

{¶54} Furthermore, the trial court was not required to make a finding regarding whether the children could be returned to Lori in a reasonable period of time or consider the factors under R.C. 2151.414(E). *See id.* (if the court determines that one of the listed factors under R.C. 2151.414(E) apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent"). "When an agency seeks permanent custody pursuant to R.C.

15

2151.414(B)(1)(d)," based on the fact that the child has been in the custody of a children's services agency for longer than 12 months of a 22 month consecutive period, as occurred in the present case, "the court need not find that the child cannot or should not be placed with either parent within a reasonable time as required by R.C. 2151.414(B)(1)(a). The only consideration is the best interest of the child." (Citation omitted). *In re Thompson*, 11th Dist. Portage Nos. 2004-P-0023 and 2004-P-0024, 2004-Ohio-3686, ¶ 34; *In re Janson*, 11th Dist. Geauga No. 2005-G-2656, 2005-Ohio-6712, ¶ 37-38 (the trial court is "not required to consider the R.C. 2151.414(E) factors" when its finding under R.C. 2151.414(B)(1)(d) is supported by clear and convincing evidence).

{¶55} Lori also argues, although again under the issue of whether the children could be returned to her in a reasonable time, that the trial court ignored the evidence that the children had been in four foster homes over two years. Again, we need not determine whether this impacted the ability of the children to return to Lori's home within a reasonable time. Further, while living in several foster homes may have created some lack of permanency, this does not negate Lori's inability to provide a secure home. *See In re S.P.*, 2011-Ohio-3747, at ¶ 69 (although the children had been in several different foster placements while in the custody of children's services, it was in their best interest to be permanently removed from their parents' custody, as the parents could not provide a secure home) (citation omitted). Furthermore, as described above, B.R.C. and E.J.C. are currently living in a secure foster placement and are bonded with their foster parents.

{¶56} Finally, Lori argues that R.C. 2151.414(D)(2), which allows for the trial court to make a finding that "permanent custody is in the best interest of the child" if various circumstances apply, cannot apply in this case, since there was no basis for finding that the children do "not meet the requirements for a planned permanent living arrangement [PPLA] pursuant to division (A)(5) of section 2151.353 of the Revised Code."[2] R.C. 2151.414(D)(2)(c).

{¶57} We need not determine whether the children could have been placed in a PPLA. R.C. 2151.414(D)(2) applies only as an alternative basis for the trial court to determine that the termination of parental rights is in the best interest of the children. *In re J.B.*, 8th Dist. Cuyahoga No. 97995, 2012-Ohio-3087, ¶ 22, fn. 2; *In re M.K.*, 10th Dist. Franklin Nos. 09AP-1141 and 09AP-1142, 2010-Ohio-2194, ¶ 22. Since the trial court had sufficient grounds under R.C. 2151.414(D)(1) to make a determination that termination of parental rights was in the best interest of the children, it was not required to consider the factors under (D)(2).

{¶58} The first assignment of error is without merit.

{¶59} In her second assignment of error, Lori asserts that the trial court erred by relying on testimony from the social worker and therapist regarding the wishes of the children, rather than evidence from either the guardian ad litem or the children themselves. She asserts that the guardian ad litem provided only limited information about E.J.C.'s wishes and none about B.R.C.'s wishes.

---

2. Lori concedes that the court was not actually required to place the children in a PPLA, since this was not requested by PCDJFS. *See In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, syllabus ("a juvenile court does not have the authority to place the child in a planned permanent living arrangement when the agency does not request this disposition").

17

**{¶60}** R.C. 2151.414(D)(1)(b) requires that the court consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child" in reaching its best interest determination. "A judgment that fails to consider the children's wishes is subject to reversal." *In re M.J.*, 11th Dist. Ashtabula No. 2011-A-0014, 2011-Ohio-2715, ¶ 64. The trial court has the discretion to consider the child's wishes as expressed either through the guardian ad litem *or* directly though the child. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 56.

**{¶61}** Contrary to Lori's assertions, the guardian ad litem stated in her report, regarding B.R.C., that he did not want to be adopted, but if he was, he wanted to live with the first set of foster parents. Further, regarding E.J.C., the guardian ad litem's report stated that E.J.C. wants to be with his mother, but if he cannot, he "wants to stay where he is." Although Lori argues that E.J.C.'s statement was made in the past and not recently, she points to no requirement as to when the statement must be made to the guardian ad litem to provide sufficient evidence of the child's wishes.

**{¶62}** The guardian ad litem's statements in this case are supplemented by those of counsel appointed to each child to advance their best interests. B.R.C.'s counsel stated, on behalf of B.R.C., that he wanted to stay where he was, with the current foster parents. E.J.C.'s counsel stated that E.J.C. wishes to stay in his current foster home, and he asked counsel to express this to the court. *See In re Haller*, 3rd Dist. Wyandot No. 16-08-16, 2009-Ohio-545, ¶ 19 (counsel's statement to the court regarding the children's wishes "provides a further affirmative indication in the record that the trial court considered" the child's wishes).

**{¶63}** The additional testimony from the counselor and PCDJFS case worker regarding how the children interacted with their foster parents and reacted to issues with their mother was not the only evidence relied on by the court, since it had sufficient evidence of the children's wishes before it under the statutory requirements. Based on the foregoing, we cannot find that the trial court failed to consider the children's wishes as required by R.C. 2151.414(D)(1)(b).

**{¶64}** The second assignment of error is without merit.

**{¶65}** In her third assignment of error, Lori argues that since the trial court's August 5, 2013 Magistrate's Decision, finding that PCDJFS had made reasonable efforts to return the children to her home, was entered following the filing of her notice of appeal, it cannot be considered. Thus, the court erred by failing to find that reasonable efforts were made to reunite the children with Lori.

**{¶66}** Regardless of whether this separate Journal Entry is properly before this court, however, we find that the lower court made the necessary reasonable efforts findings in separate judgments in this case, and thus, there is no basis for reversal on this ground.

**{¶67}** "At various stages of the child-custody proceeding, the [children services] agency may be required * * * to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the 'reasonable case planning and diligent efforts by the agency to assist the parents' when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination

whether reasonable efforts have been made in every * * * motion for permanent custody." *In re Johnston*, 11th Dist. Ashtabula No. 2008-A-0015, 2008-Ohio-3603, ¶ 52, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 42.

**{¶68}** "This does not mean that the agency is relieved of the duty to make reasonable efforts," since "[a]t various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification." *In re C.F.* at ¶ 42. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

**{¶69}** In the present case, the court made determinations several times throughout the proceedings that "reasonable efforts * * * were made to prevent the removal of the children from the home, to eliminate the continued removal of the children from the home or to make it possible for the children to safely return home." These determinations were made following the June 27, 2011 Dispositional Hearing, and the September 16, 2011, March 21, 2012, and September 18, 2012 Dispositional Review Hearings. These findings are sufficient to satisfy the requirement that the agency demonstrate that reasonable efforts have been made in this case. "[W]hen the matter has been filed under R.C. 2151.413 and 2151.414, a trial court does not need to make a 'reasonable efforts' determination at the final permanent custody hearing so long as the court has made a 'reasonable efforts' finding at some point after the child came under the temporary care of the agency." *In re G.G.*, 7th Dist. Columbiana No. 12 CO 6, 2013-Ohio-3991, ¶ 22, citing *In re C.F.* at ¶ 4. *See id.* (the reasonable efforts determination was properly made when the court issued several orders making this

20

finding while the children were in temporary custody of the child services agency); *In re M.S.*, 4th Dist. Pike Nos. 11CA823 and 11CA824, 2012-Ohio-3207, ¶ 32 (the trial court made the necessary reasonable efforts finding when it found, during dispositional hearings, that children services "had made reasonable efforts to prevent the removal of the Children from their home, to eliminate the continued removal of the Children from their home, to make it possible for the Children to return safely home"); *In re K.L.*, 10th Dist. Franklin Nos. 13AP-218 and 13AP-231, 2013-Ohio-3499, ¶ 40.

**{¶70}** The third assignment of error is without merit.

**{¶71}** In her fourth assignment of error, Lori argues that the trial court erred by denying her Motion for Hair Follicle Testing, which would have allowed her to prove her sobriety to the court and show that she could be reunited with the children in a reasonable period of time.

**{¶72}** Lori's Motion essentially related to the admission of the results of a drug test, if permitted by the court. "We review the trial court's admission of evidence under an abuse of discretion standard." *In re Lambert*, 11th Dist. Geauga No. 2007-G-2751, 2007-Ohio-2857, ¶ 84.

**{¶73}** The lower court explained during the hearing on Lori's Motion that part of the basis for its denial was the court's concern about her ability to obtain judicial release if the test results were positive, a relevant consideration which justified its decision.

**{¶74}** More importantly, the trial court appeared to accept Lori's testimony that she was sober while incarcerated, stating in its factual findings that Lori "has also maintained sobriety while in prison." Thus, a hair follicle test would not have impacted the court's conclusion on the matter of her sobriety while incarcerated. We also

21

emphasize that the court was not required to make a finding that the children could not be reunited with Lori within a reasonable period of time and, therefore, evidence of her sobriety through the test is unnecessary for this purpose.

{¶75} Moreover, as explained throughout the first assignment of error, there were many other justifications for the court's finding that it was not in the children's best interests to return to Lori's custody, even when assuming the truth of her statements that she remained sober while incarcerated. Her sobriety alone cannot overcome her failure to comply with the case plan or provide a home for the children and the children's need for a permanent placement.

{¶76} Based on the foregoing, we also cannot find that Lori is able to prevail on her argument that the failure to allow admission of hair follicle testing results caused a lack of due process, especially given that she failed to provide any case law in support of this contention.

{¶77} The fourth assignment of error is without merit.

{¶78} Based on the foregoing, the Judgment of the Portage County Court of Common Pleas, Juvenile Division, granting permanent custody of B.R.C. and E.J.C. to PCDJFS, is affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.