[Cite as *In re K.W.*, 2011-Ohio-6371.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | CASE NOS. 11 BE 8 |
| | ) | 11 BE 13 |
| K.W. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeals from the Court of Common Pleas, Juvenile Division, of Belmont County, Ohio
Case No. 09 JC 182

JUDGMENT:    Affirmed.

APPEARANCES:

For Appellants:    Atty. Jay Blackstone
Summit Professional Centre
6600 Summit Drive
Canfield, Ohio 44406

For Appellee:    Atty. Christopher Berhalter
Belmont County Prosecutor
Atty. Rhonda Greenwood
Assistant Prosecuting Attorney
147-A West Main Street
St. Clairsville, Ohio 43950

Guardian Ad Litem:    Atty. Cory DelGuzzo
118 West Main Street
St. Clairsville, Ohio 43950

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: December 7, 2011

WAITE, P.J.

{1} Appellants' attorney has filed a motion to withdraw as appointed counsel in a permanent custody case pursuant to *In re K.B.*, 7th Dist. No. 09 BE 24, 2010-Ohio-1015 and *State v. Toney* (1970), 23 Ohio App.2d 203, 52 O.O.2d 304, 262 N.Ed.2d 419. Appellants Christina Elliott ("Christina") and Robert Wilson ("Robert") appealed the judgment of the Belmont County Court of Common Pleas, Juvenile Division, awarding permanent custody of their child K.W. to the Belmont County Job and Family Services Agency ("BCJFS"). Appellants' counsel has determined that this filing constitutes a frivolous appeal after examining the record and finding no reasonable arguments on appeal. Counsel's motion to withdraw is granted and the judgment of the trial court is affirmed.

{2} On March 9, 2009, the BCJFS filed a dependency complaint seeking emergency shelter for K.W., a minor child of Christina and Robert. The child was born on March 6, 2009, three days before the dependency complaint was filed. Christina also had twin daughters who were already wards of the state in the custody of BCJFS. The court appointed counsel to represent Christina and Robert. After the court held adjudicatory and dispositional hearings, it adjudicated K.W. a dependent child and awarded temporary custody of the child to BCJFS. K.W. was added to the BCJFS case plan for the other two girls. The objective of the case plan was to reunite the child with the parents. Christina and Robert were required to achieve certain goals and benchmarks as part of the plan. They were required to obtain stable and secure housing, stable employment, undergo psychological and

psychiatric evaluations, attend counseling and parenting sessions, and Robert was to submit to alcohol counseling.

{3} On December 22, 2009, the juvenile court granted permanent custody of Christina's twin daughters to BCJFS. Appellants appealed this judgment, and it was affirmed by us on December 6, 2010, in *In re N.E.*, 7th Dist. Nos. 10 BE1 and 10 BE 2, 2010-Ohio-6012.

{4} On March 3, 2010, BCJFS filed a motion for permanent custody of K.W. It filed an amended motion on May 25, 2010. The court continued temporary custody indefinitely, subject to periodic review.

{5} On April 16, 2010, BCJFS filed a motion for judicial determination that reasonable efforts had been made toward reunification of K.W. with Appellants. On April 21, 2010, the court sustained the motion.

{6} BCJFS filed another motion for permanent custody on October 25, 2010. Hearings were held on December 15, 2010, and February 10, and March 2, 2011. On March 10, 2011, the court issued a judgment entry awarding permanent custody of K.W. to BCJFS.

{7} Both parents filed notices of appeal and two case numbers were designated, Case No. 11 BE 8 and 11 BE 13. We appointed counsel to Appellants for this appeal. The two appeals were consolidated on April 19, 2011.

{8} On July 7, 2011, counsel filed a no merit brief pursuant to *In re. K.B.* and *State v. Toney*. Appellants were then granted 30 days to raise any additional

claims of error in this appeal. Nothing more was filed. This is an expedited case pursuant to App.R. 11.2(C).

**{9}** This Court, in *In re K.B.*, held that the procedure for withdrawal of appointed counsel that is used in criminal cases, as set forth in *Toney*, supra, and *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, may be used in parental rights cases as well where counsel is appointed to indigent parents. *In re K.B.* at ¶12. *Toney* set forth the procedure to be used when counsel of record determines that an indigent's appeal is frivolous:

**{10}** "3. Where a court-appointed counsel, with long and extensive experience * * * concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.

**{11}** "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, *pro se*.

**{12}** "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments *pro se* of the indigent, and then determine whether or not the appeal is wholly frivolous.

**{13}** "6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.

**{14}** "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." (Emphasis in original.) Id., at syllabus.

**{15}** A parent's right to raise his or her children is an essential and basic civil right. *In re Murray* (1990), 52 Ohio St.3d 155, 157, citing *Stanley v. Illinois* (1972), 405 U.S. 645, 651, 92 S.Ct. 1208. However, this right is not absolute. *In re Sims*, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, ¶23. In order to protect a child's welfare, the state may terminate parental rights as a last resort. Id.

**{16}** An appellate court reviews a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. Id. at ¶36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Furthermore, "judgments supported by some competent, credible evidence going to all the essential elements of the case should not be reversed by a reviewing court." *In re N.E.*, supra, at ¶42, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, and *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578.

**{17}** A public children services agency may file a motion for permanent custody of a child pursuant to R.C. 2151.413. The procedure for resolving the motion is contained primarily in R.C. 2151.414. The court may grant permanent custody to a children's services agency if the child has been in the custody of the agency for

twelve or more months of a consecutive twenty-two month period, and if it is proven by clear and convincing evidence that it is in the best interests of the child to grant permanent custody to the agency. R.C. 2151.414(B)(1)(d). The agency must also establish at some point in the custody proceedings that reasonable efforts have been made to reunite the child with its family. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816. There is no dispute that K.W. has been in the custody of BCJFS for more than twelve months of a consecutive period of twenty-two months. K.W. has been in foster care with the same family since she was three days old. Further, the issue as to whether BCJFS made reasonable efforts to reunite the family was decided on April 21, 2010. The only question to be resolved by the trial court at the permanent custody hearing was whether it was in the best interests of the child to grant permanent custody to BCJFS.

{18} R.C. 2151.414(D)(1) contains the factors for the court to consider in determining the best interests of the child:

{19} "(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

{20} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

**{21}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{22}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

**{23}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{24}** "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

**{25}** R.C. 2151.414(E)(7)-(11) contain other relevant factors:

**{26}** "(7) The parent has been convicted of or pleaded guilty to one of the following [crimes]:

**{27}** "* * *

**{28}** "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to

treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

{29} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

{30} "(10) The parent has abandoned the child.

{31} "(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{32} The record reveals that Appellants did not fulfill the terms of their case management plan. The ultimate objective of the plan was to reunite Appellants with K.W. The case plan required Appellants to obtain stable employment, secure proper housing, undergo psychological and psychiatric evaluations, attend counseling and parenting sessions. Additionally, Robert was to submit to alcohol counseling.

**{33}** Extraordinary efforts were made to assist Appellants in achieving the goals of the case plan. Judy Beckett of BCJFS testified that she was not aware of any other case in which the agency had done so much. BCJFS provided transportation services, substitute care, financial aid, counseling, practical advice, meeting facilities, case management, and other services for Appellants. We are also aware that prior to final judgment in this case, Christina lost custody of two other children to BCJFS who were part of the same case plan as K.W., and we subsequently affirmed that judgment.

**{34}** Both Appellants had counseling requirements as part of the case plan. Christina's attendance at counseling was sporadic at best. She would cancel appointments and not reschedule them until months later. Ultimately, she missed half of her appointments. Robert did not complete either his alcohol counseling or his general counseling. He believed he had solved his alcohol problem and did not need counseling.

**{35}** Appellants' apartment contained many health and safety problems that needed to be resolved before a child could live there. Garbage was on the floors, it was infested with roaches, and pesticides and other chemicals were stored and spilled on the kitchen floor. Prescription medicines were kept in a drawer that a child could easily reach and open. The apartment had water damage and mold. The utilities were turned off from time to time. BCJFS attempted to help Appellants rectify the health and safety problems with their apartment, but then were denied entry to the apartment on four separate occasions. Christina testified that she feels

intimidated by BCJFS employees and admitted that she had refused to allow them into her apartment.

**{36}** BCJFS provided employment referrals, but neither Appellant obtained documentable stable employment. One lead provided to them was a job as a car detailer. Robert did not take the job using the excuse that he did not have a driver's license, and Christina stated that she did not do that kind of work. Christina made a few dollars selling Avon products, but insisted that employment should not be part of her case plan because she believed she could get Social Security benefits due to her mental health problems. She testified, though, that she was denied Social Security benefits. There was no consistent information about Robert's employment situation. There was some evidence that he was working as a handyman, but it was reported that he was not earning any money from it, but rather, was working to pay off a debt. He claimed to have had three jobs since K.W. was born. He believed his job situation was being hampered by a criminal charge that had been dismissed in the 1990s. Neither Appellant provided any pay stubs or other verification of their employment circumstances.

**{37}** BCJFS provided some money to Appellants to help with rent, but they allowed their rent to go unpaid. The record indicates that Appellants were able to purchase such things as a computer, cell phones, and a Sony Playstation, even though the rent had gone unpaid. Appellants' landlord allowed them to remain as tenants even though they had not paid rent for many months. The landlord also put Appellants' electric bill in his own name to prevent it from being shut off. Despite

being allowed to live more or less rent free, they failed to deal with all of the health and safety issues in their apartment.

{38} The court, in an effort to foster parental bonding between K.W. and Appellants, allowed for an extensive amount of visitation time. This visitation took place in a visitation room provided by BCJFS, because Appellants' apartment was not suitable for children. K.W. often had an aversion to visitation, and after visitation would return to her foster home with a foul odor and would be wet through her clothes. K.W. would also be frustrated after visitation and would bite and scratch people. BCJFS would regularly need to sanitize the visitation room after the visits due to Appellants' unhygienic condition so that other families could use the room.

{39} K.W.'s guardian ad litem testified that he believes Appellants had the ability, but not the motivation, to complete their case plan. His primary concerns were that Appellants missed various appointments, that there was a cockroach problem at their home that was not being dealt with, and that they had failed to secure public housing once they became eligible for it.

{40} Walter Smith of the Metropolitan Housing Authority testified that he conducted a grievance hearing for Appellants because they were denied public housing due to a criminal matter in Robert's past. Mr. Smith found that the criminal charge was from the early 1990s and had been dismissed. He sustained Appellants' grievance, and put them on a waiting list for public housing. The record indicates, though, that Appellants were 15th in line to receive housing in December 2010, but by February 2011, they had been pushed back to 30th in line.

**{41}** K.W.'s foster mother testified that she is a stay-at-home mother with seven children at home. Two of those children are foster children. All of the children are special needs children. She has been with K.W. since the child was three days old. She testified that her family has bonded with K.W. The child is treated as a member of the family, and she plans to adopt K.W. when that option becomes available. She also stated that she would keep K.W. in contact with her half-siblings after adoption. She testified that K.W. becomes aggressive and destructive after visiting with Appellants and that K.W. does not want to visit with Appellants and runs away from the BCJFS van that comes to take her to the visit.

**{42}** The testimony supports the trial court's findings that it is in K.W.'s best interest to grant permanent custody to BCJFS. The applicable statutory best interest factors support the court's determination. First, K.W. has bonded with her foster mother and family, and her foster mother wants to adopt her. K.W.'s foster mother also plans to keep the child in contact with her half-siblings. Second, the court stated that it would not consider the wishes of the child, so that factor neither supports nor undermines the trial court's judgment. Third, at the time of the hearing K.W. had been in Appellee's temporary custody for all but the first three days of her life. Fourth, there was testimony that K.W. is in need of a legally secure placement. Fifth, with respect to the factors in R.C. 2151.414(E)(7)-(11), the court found that Christina has already had her parental rights involuntarily terminated with respect to two of K.W.'s siblings. The hearing in this case went on for three days, twelve people testified, and numerous exhibits were admitted as evidence. The evidence

overwhelmingly supports the trial court's decision.  For all these reasons, counsel's motion to withdraw is hereby sustained and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.