[Cite as *In re A.W.*, 2016-Ohio-750.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

IN RE:

    A.W.,                                     CASE NO. 17-15-15

ADJUDGED DEPENDENT CHILD.

                                            O P I N I O N

[TINA BAKER – APPELLANT]

Appeal from Shelby County Common Pleas Court
Juvenile Division
Trial Court No. 2014-DEP-0014

**Judgment Affirmed**

Date of Decision: February 29, 2016

APPEARANCES:

    *Robert E. Long III* for Appellant

    *Melissa L. Wood* for Appellee

**PRESTON, J.**

{¶1} Appellant, Tina Baker ("Baker"), appeals the October 16, 2015 judgment entry of the Shelby County Court of Common Pleas, Juvenile Division, granting the motion for legal custody filed by the Shelby County Department of Job and Family Services, Children Services Division ("Agency") and ordering Betty Nichols ("Nichols") to be the legal custodian of A.W. For the reasons that follow, we affirm.

{¶2} On August 25, 2014, the Agency filed a complaint alleging A.W., Baker's natural child, to be a dependent child. (Doc. Nos. 1, 2). On that same day, the Agency filed a motion requesting that the trial court grant ex parte, emergency, temporary custody of A.W. to Nichols, a "kinship placement." (Doc. No. 3). The trial court granted the Agency's motion that day and granted emergency custody of A.W. to Nichols. (Doc. No. 5). Following an August 28, 2014 shelter-care hearing, the trial court ordered that A.W. remain in the temporary custody of Nichols pending a dispositional hearing. (Doc. No. 19).

{¶3} On September 16, 2014, the Agency filed a case plan. (Doc. No. 22). The case plan provided behaviors that must "change to reduce risk and address safety issues of" A.W.:

> Tina's mental health concerns will be addressed. Tina will
>
> learn parenting skills and techniques that will assist her in being

involved with [A.W.]. Tina will not reside in a home that has physical hazards, and will be able to pay her bills and provide for the family's basic needs. Tina will not allow any contact between Glen [Baker, Baker's husband,] and [A.W.].

(*Id.*). The case plan also stated, "[A.W.] has disclosed sexual abuse against Tina's husband, Glen Baker ["Glen"]." (*Id.*). The case plan provided, in part, that to make these behavioral changes:

1. Tina will have a mental health assessment completed by an approved provider. Tina will follow all recommendations and suggestions upon completion of the assessment.

* * *

2. Tina will work with an in-home coach during weekly visits with [A.W.] to address parent education and knowledge of a child who is [A.W.]'s age, and at her developmental level.

3. Tina will provide a safe and stable residence.

(*Id.*). The case plan stated that the family's progress would be measured, in part, as follows: "1. Tina will attend the mental health assessment and all subsequent appointments as required. * * * 3. The agency will not receive any reports of contact between Glen and [A.W.]." (*Id.*).

{¶4} On September 24, 2014, following a September 17, 2014 adjudicatory hearing, the trial court adjudicated A.W. a dependent child under R.C. 2151.04(C)

and (D). (Doc. No. 24). The trial court ordered that A.W. remain in the temporary custody of Nichols pending a dispositional hearing. (*Id.*).

{¶5} On November 10, 2014, following an October 30, 2014 dispositional hearing, the trial court approved the September 16, 2014 case plan but ordered that it be amended "to provide for one to two phone calls a week between Tina Baker and A.W." (Doc. No. 33). The trial court also ordered that A.W. remain in the temporary custody of Nichols subject to court-ordered, protective supervision in accordance with A.W.'s best interests. (*Id.*).

{¶6} On January 21, 2015, the Agency filed a consolidated motion to grant legal custody to Nichols, to terminate Agency services, and to close the case. (Doc. No. 35).

{¶7} On February 5, 2015, the trial court held a hearing on the Agency's motion for legal custody. (*See* Doc. No. 42). The trial court denied the Agency's motion, finding that the Agency did not make "reasonable efforts to return A.W. to the home of a parent as required by law" and stating several reasons for its decision. (*Id.*).

{¶8} On July 13, 2015, the Agency filed a consolidated motion to grant legal custody to Nichols, to terminate Agency services, and to close the case. (Doc. No. 52).

{¶9} On July 16, 2015, the Agency filed an amended case plan containing provisions unchanged from the original, September 16, 2014 case plan. (*See* Doc. Nos. 53, 54).

{¶10} The trial court held a hearing on the Agency's motion for legal custody on October 1, 2015. (*See* Oct. 1, 2015 Tr. at 6). On October 16, 2015, the trial court issued the judgment entry that is the subject of this appeal. (Doc. No. 62). In it, the trial court granted the Agency's motion for legal custody and ordered Nichols to be the legal custodian of A.W. (*Id.*). Among its other orders, the trial court ordered that the Agency "remain involved * * * for a period of 180 days for support of the ongoing services for A.W." (*Id.*). The trial court also ordered that Baker be allowed Agency-supervised visitation with A.W. under the visitation schedule in effect at the time. (*Id.*).

{¶11} Baker filed a notice of appeal on October 26, 2015. (Doc. No. 63). She raises two assignments of error for our review, which we address together.

### Assignment of Error No. I

**The trial court erred in finding that the Shelby County Department of Job and Family Services – Children Services Division (Children Services) made reasonable efforts to prevent the continued removal of the minor child, A.W., from the home of the appellant/mother.**

### Assignment of Error No. II

**The trial court abused its discretion in granting legal custody to a non-relative.**

{¶12} In her first and second assignments of error, Baker argues that the trial court abused its discretion in granting legal custody of A.W. to Nichols because, according to Baker, the record does not support the trial court's conclusion that the Agency made reasonable efforts to prevent the continued removal of A.W. from Baker's home.

{¶13} R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts "'to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.'" *In re B.P.*, 3d Dist. Logan No. 8-15-07, 2015-Ohio-5445, ¶ 39, quoting R.C. 2151.419(A)(1). "[T]he agency bears the burden of showing that it made reasonable efforts." *In re T.S.*, 3d Dist. Mercer Nos. 10-14-13, 10-14-14, and 10-14-15, 2015-Ohio-1184, ¶ 26, citing R.C. 2151.419(A)(1). "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 24, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 48 and *In re Sherman*, 3d Dist. Hancock Nos. 5-06-21, 5-06-22, and 5-06-23, 2006-Ohio-6485, ¶ 11. An abuse of discretion suggests that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶14}** "'Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated.'" *In re T.S.* at ¶ 26, quoting *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3 (Oct. 30, 2001). "To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification." *Id.* at ¶ 27, citing *In re Evans* at *3. "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *Id.*, citing *In re Evans* at *3. "'Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case.'" *Id.*, quoting *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 10. ""'Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re M.A.P.*, 12th Dist. Butler Nos. CA2012-08-164 and CA2012-08-165, 2013-Ohio-655, ¶ 47. "We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and safety is paramount." *In re T.S.* at ¶ 27, citing R.C. 2151.419(A)(1).

**{¶15}** In its October 16, 2015 judgment entry granting the Agency legal custody of A.W., the trial court determined that the Agency made reasonable efforts to prevent the continued removal of A.W. from Baker's home:

> The Court further finds that reasonable efforts have been made by [the Agency] to prevent the continued removal of A.W. from the home of Tina Baker, but due to Tina Baker's inability to keep A.W. safe from Glen Baker the continued removal of A.W. from the home of her parent is in her best interest.
>
> The Court further finds that reasonable efforts have been made by [the Agency] toward permanency by the grant of legal custody to Betty Nichols.

(Footnote omitted.) (Doc. No. 62 at 7). The trial court made several factual findings in support of its conclusion that the Agency made reasonable efforts to prevent the continued removal of A.W. from Baker's home. (*See id.* at 3-5). As we will explain below, the trial court's findings are supported by the record.

**{¶16}** Baker offers several arguments in support of her assignment of error. Baker argues that the Agency did not allow unsupervised visitation between Baker and A.W. She argues that no provision in the case plan requires that, before unsupervised visitation can proceed, "A.W. must first express to her counselor that she is comfortable and wanting unsupervised visitation." (Appellant's Brief at 20). Baker argues that the Agency did not make reasonable efforts because the

Agency "stopped providing [Baker] with free bus tokens to ride the public transportation" to attend her counseling sessions. (*Id.* at 21). Baker also argues that Glen does not reside with her, that Glen was not convicted of sexually assaulting A.W., that there is no requirement under the case plan that Baker have no contact with Glen, and that the Agency held against her that she did not divorce Glen. Finally, Baker argues that the case plan did not require Baker to have no contact with her juvenile son, who, according to Baker's testimony, has recent criminal convictions for "attempted gross sexual imposition." (Oct. 1, 2015 Tr. at 175-176).

{¶17} Regarding Baker's allegation that the Agency did not allow unsupervised visitation, the Agency argues that, while participants in a case plan for reunification will typically "progress from supervised visitation to unsupervised visitation as progress occurs," it was Baker's lack of progress—not a lack of reasonable efforts on the Agency's part—that prevented unsupervised visitation. (Appellee's Brief at 8).

{¶18} At the hearing on the Agency's motion for legal custody, the caseworker, Sharon Brulport ("Brulport"), testified that Baker "has some things she's done well in and some things she has struggled with for the caseplan." (Oct. 1, 2015 Tr. at 52). According to Brulport, Baker went "to some but not all" of her mental-health appointments, as required under the case plan. (*Id.*). Baker's psychotherapist, Steven White ("White"), also testified that he saw Baker in only

four sessions and that Baker missed "nine or ten" appointments over a roughly three-month span. (*Id.* at 18-19). Baker testified that the Agency "took [her] Dial a Ride tokens away" because the Agency believed Baker irresponsibly allowed her electric service to be disconnected, causing her to miss the appointments with White. (*Id.* at 140-147). However, Baker admitted that she did not ask Brulport for transportation assistance after that and that additional transportation methods are available to her. (*Id.* at 146-147, 176-178). In addition, Baker testified that she pays for cable television and Internet, and others paid for Baker's manicures and for Baker to take a vacation to Florida. (*Id.* at 134, 162-163, 174). Brulport testified that, despite monthly meetings with Baker, Baker never requested additional public-transportation tokens from Brulport or informed Brulport that she could not attend the appointments due to a lack of transportation. (*Id.* at 54-55).

{¶19} Concerning Baker's ability to provide a safe and stable residence, including not allowing any contact between Glen and A.W.—as required by the case plan—White testified that "some of the choices that [Baker] makes would not be consistent with her providing safety for [A.W.]." (*Id.* at 19). In support of this testimony, White cited Baker's "[c]ontinuing to have * * * a lot of contact with Glen" and "continuing to put most of her focus" on her two sons. (*Id.* at 20). Brulport testified that if A.W. was to live with Baker, the concern would be "[t]hat Glen would come to the home and then [A.W.] would be at risk." (*Id.* at 56).

Brulport added that Glen "comes and goes" from Baker's residence. (*Id.* at 59).

According to Brulport, Glen "reported * * * in August that he lived" at Baker's

residence, but on the day of the hearing, Baker reported that Glen does not reside

at Baker's residence. (*Id.*). Baker agreed on cross-examination that Glen "comes

and goes" from her residence and "shows up periodically." (*Id.* at 156, 172-173).

Baker also testified on cross-examination:

> [Agency Counsel]: Okay, do you understand that [the Agency's] concern is that Glen Baker could come into contact with [A.W.], that that's what they are worried about?
>
> [Baker]: Yes, I understand that.
>
> [Agency Counsel]: So you also understand that the concern isn't whether you are divorced or currently married, it's the fear of contact. Do you understand that that's their concern?
>
> [Baker]: Yes.
>
> [Agency Counsel]: Nonetheless, Glen has continued to have contact with you and your home?
>
> [Baker]: Yes.

(*Id.* at 175).

{¶20} Based on the testimony of Brulport, White, and Baker, it is clear that Baker's lack of unsupervised visitation was a result of her failure to progress in her case plan. Concerning the case-plan requirement that Baker attend all of her counseling appointments, the Agency's not providing transportation to Baker to attend appointments does not amount to a failure to make reasonable efforts to prevent the continued removal of A.W. from Baker's home. *See In re G.G.*, 7th Dist. Columbiana No. 12 CO 6, 2013-Ohio-3991, ¶ 13, 24, 26. This is particularly true when, as the trial court found, Baker had alternate transportation methods available and did not inform the Agency of any transportation issues. *See id.* (Doc. No. 62 at 5). What is more, despite her claim that she had no money to spend on transportation, Baker pays for cable television and allowed others to pay for her manicures and to vacation in Florida. Even beyond those admissions by Baker, the trial court found Baker's testimony "not credible," and we defer to the trial court's credibility determination. (Doc. No. 62 at 5). *See In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 37.

{¶21} Concerning the case-plan requirements that Baker maintain a safe and stable residence and prohibit contact between Glen and A.W., the evidence in the record demonstrates, as the trial court found, that Baker fails to grasp that her current relationship with Glen—in which he "comes and goes" from and "shows up periodically" at her residence—poses the potential for contact between Glen and A.W. *See In re G.G.* at ¶ 24. (Doc. No. 62 at 4). Baker makes irrelevant

arguments concerning this issue. She quibbles over the specific nature of Glen's conviction and argues that he "was not convicted of assaulting A.W., let alone of sexually touching her." (Appellant's Brief at 11). However, the case plan simply required no contact between Glen and A.W. If Baker felt that the case plan wrongfully required a separation of Glen and A.W.—for example, because Glen did not actually harm A.W.—then her remedy was to move to modify the case plan, not to attack the terms of the case plan in response to a motion for legal custody.[1] *See In re Z.S.*, 2d Dist. Montgomery No. 25986, 2014-Ohio-3748, ¶ 77.

**{¶22}** Baker also makes obvious, irrelevant statements in support of her meritless argument that the Agency failed to use reasonable efforts: that the case plan does not contain a requirement that Baker have no contact with A.W., a requirement that Baker divorce Glen, a requirement that Baker have no contact with her juvenile son who was recently convicted of attempted gross sexual imposition, or a requirement that A.W. express a desire for unsupervised visitation before it can proceed. As we stated above, Baker fails to grasp what *is* relevant: that her inability to safeguard A.W. against harm and provide a safe and stable home, along with her other deficiencies under the case plan, are the cause for her not progressing to unsupervised visitation. As the Agency aptly stated in its brief:

---

[1] We nevertheless note that Baker does not dispute that A.W. was the victim of Glen's attempted-assault conviction, as the trial court found. (*See* Doc. No. 62 at 5, citing Exs. A, B, and C). The trial court also found that Glen was "convicted of child endangering of A.W. in 2006"—something Baker confirmed on cross-examination. (*Id.* at 5); (Oct. 1, 2015 Tr. at 171). In short, A.W. was twice the victim of crimes committed by Glen.

"[Baker] is unwilling or unable to recognize threats to A.W., and therefore unable to adequately protect her from harm." (Appellee's Brief at 9).

**{¶23}** Baker was not simply entitled to unsupervised visitation or transportation to appointments, and the Agency's decisions to not allow or provide those things do not amount to a failure to make reasonable efforts to prevent the continued removal of A.W. from Baker's home. *See In re Jo.S.*, 3d Dist. Hancock Nos. 5-11-16 and 5-11-17, 2011-Ohio-6017, ¶ 49, 54 (affirming the trial court's judgments granting permanent custody to the agency-appellee and citing in support the caseworker's testimony that the parents-appellants "routinely visited the children during scheduled supervised visitation" but "that visitation did not progress to off-site and unsupervised visitation as a result of [the parents-appellants'] failure to complete or demonstrate any progress in completing [their] assigned objectives"); *In re Cuichta*, 7th Dist. Belmont No. 97 BA 5, 1999 WL 167852, *7 (Mar. 23, 1999) ("While appellant criticizes Children Services for not expanding visitation beyond the 'bare-bones' sessions, it was appellants [sic] own conduct which caused Children Services employees to discourage extended, unsupervised visitation."); *In re G.G.*, 2013-Ohio-3991, at ¶ 13, 24, 26.

**{¶24}** To summarize, many of Baker's arguments in this appeal are aimed at defending her actions in relation to the case plan rather than demonstrating how the trial court abused its discretion in concluding that the Agency made reasonable efforts to prevent the continued removal of A.W. from Baker's home. To the

contrary, after reviewing the record, we conclude that the trial court did not abuse its discretion in granting the Agency's motion for legal custody. The trial court's conclusion that the Agency made reasonable efforts to prevent the continued removal of A.W. from Baker's home is not unreasonable, arbitrary, or unconscionable.

{¶25} Baker's assignments of error are overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**